UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| V. | * | Cr. No. CCB-20-285 |
| SAMSON OGUNTUYI, *ET AL.* | * | |
| Defendant | * | |
| For: SAMSON OGUNTUYI | * | |

**DEFENDANT OGUNTUYI'S MEMORANDUM IN AID OF SENTENCING**

Samson Oguntuyi, by his undersigned counsel, hereby files this memorandum in aid of sentencing to propose a total sentence of four years and as grounds states:

On August 24, 2021, Mr. Oguntuyi pled guilty to three related offenses charged in the second superseding indictment - conspiracy to commit bank and wire fraud (count 1), bank fraud (count 7) and aggravated identity theft (count 22).   Count 22 carries a mandatory two year consecutive sentence to any time given for counts 1 and 7.   For the reasons stated below, the defendant seeks a sentence of two years on counts 1 and 7, concurrent, plus the mandatory two years for count 22, for a total sentence of four years. The Government seeks a total sentence of 8.5 years, which is excessive given the actual facts of this case.   In addition, the Court is asked to recommend that Mr. Oguntuyi receive credit for the 19 months he has already served in jail for these offenses.

The conspiracy in this case involved the theft and depositing of stolen checks and the obtaining, and occasional use, of stolen credit cards.   The checks were deposited into accounts set up by the conspirators, the cards were used via communication between the conspirators and the exchange of card numbers and personal identifying information. The check thefts involved two victims and there were over 200 credit cards discussed.

The Government totals the potential loss at $1,560,000 due in large part to its proposal to use the potential credit limits on the cards of nearly $1,000,000 to add to the loss. The theft/fraud guideline starts at offense level 7; the Government then seeks to add 16 levels for the "loss". Thereafter, technical application of the guidelines requires adding 2 levels for number of victims, 2 for sophisticated means and 2 more for trafficking in the credit cards. In effect, the application of the guidelines in this case brings the Court to a guideline range far too high for the actual facts of the case. Instead, what the guidelines do is take the overall offense and break it down to its individual parts and then punish each part separately, essentially unbundling the offense.[1] The effect of this process is to greatly and unnecessarily increase the overall range.

The range, of course, is not be presumed reasonable. *Rita v. United States*, 551 U.S. 338, 351 (2007) held that "[I]n determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.", *citing United States v. Booker*, 543 U.S. 200, 259-260 (2005). Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory Guidelines sentence. See *Gall v. United States*, 552 U.S. 38, 46-47, (2007) and *Kimbrough v. United States,* 552 U.S. 85, 90-91 (2007).

These cases eschewing a presumption of reasonableness for the ultimate guideline range are particularly apt here because the final range is higher than the actual facts warrant. In fact, without those unbundled increases, the proper level would be 19 (base offense 7 plus 14 levels for loss between $550,000 and $1,500,00 equals 21 minus 2 for

---

[1] The term unbundling is most frequently used to describe a billing fraud scheme and was defined concisely by Judge Deborah Chasanow: "unbundling their services (i.e., billing separately for individual components of a single service in order to increase payment from the insurer)." *United States v. Fadul, et al.*, *DKC-11-385*, ECF 34, p. 13, n.6 (D.Md. 2013).

the plea under USSG sec. 3E1.1(a)).   The defendant has zero criminal history points and at offense level 19, CHC I, the range would be 30-37 months.   Defendant asks for slightly below this range, plus the 2 year mandatory minimum.

As described above, the actual conspiracy could not have been a successful conspiracy without its component parts.   The addition of two levels under USSG sec. 2B1.1(b)(10) for "sophisticated means" applies to a case that involved "hiding transactions … through the use of fictitious entities…"   App. Note 9.   In a case involving the deposits of stolen checks, creating fictitious bank accounts is a necessary component of the crime.   Similarly, sec. 2B1.1(b)(11) adds two levels for "trafficking in any access device" (credit cards are "access devices" under 18 U.S.C. sec. 1029(e)(1)).   Trafficking, however merely means the "transfer … to another".   *Id*., at 1029(e)(5).   Transfer of the card numbers is the essence of the conspiracy in court one.   And, it would not be possible to achieve a loss amount over $500,000 (or $1.5M) without the false accounts and the communications between the conspirators.   These additional levels are therefore already included, as a practical matter, in the 7 levels for the fraud plus the 14 levels for the loss.   And, by the Government's own argument, the defendants could not get to a loss level over $1,500,000 without affecting more than 10 victims.[2]

The Government's loss request of $995,000, based solely on the credit cards for which limits appear in the evidence, also greatly inflates the appropriate offense level in

---

[2]   It is a curious question who the "victims" are in this case.   Devere Insulation and Evans Transportation had their checks stolen and are obvious theft victims.   And the banks that paid out the false check to EZ Go towing and the fraudulent charges on the cards listed in the Government's Supplemental Sentencing Memorandum, ECF 101, are victims here.   Whether the persons whose cards were used, or the persons whose personal identifying information was shared among the conspirators are "victims" is an open question. Nevertheless, the defendant concedes that at least 10 victims appear in the Government's restitution list in ECF 101.

this matter.   In ECF 102, this defendant argued the legal bases for disqualifying the Government's reliance on credit card limits to determine loss.   The factual bases are equally convincing.   As the Government's Exhibits to ECF 101 show, only $22,185 was actually spent using the cards, out of the nearly $1,000,000 in credit limits.[3]   To use a completely artificial number to exaggerate the loss is wholly inconsistent with the goals of sentencing.

To be sure, the offense here is egregious on its own.   Theft from the mail, depositing stolen checks and the use of personal identifying information are all offense that deserve significant punishment.   But, that punishment, however severe, must be in accordance with the actual facts of the crimes committed.

It is worth noting that Mr. Oguntuyi has otherwise lived a life of value - he has attended college (in fact, he was about to start a semester at Georgia State University when his schooling was interrupted by his arrest), he has no prior convictions, has been married for five years and is expecting his first child next month.   He was employed full time as a delivery man for Amazon and has returned to that job after being released from CDF.

Finally, the defendant asks for the Court to recommend that he receive credit for his time in jail pretrial.   Mr. Oguntuyi was arrested on May 21, 2019, on a warrant out of Harford County, Maryland that involved the same check deposit and use of J.C.'s name that Mr. Oguntuyi pled guilty in count 22 before this Court.[4]   He remained in jail in

---

[3]   ECF 102 contains an omission in the defendant's loss calculation that needs to be corrected.   It omitted the $49,000 check from the account of EZ Go Towing.   Including this check, the total loss from the stolen checks, cards used and the trucking check is $636,185.
[4]   The Application for Statement of Charges in the Harford County case, District Court Case No. D-09-CR-19-706, was filed by United States Postal Inspector Michael Belz and

Georgia on that warrant until September 16, 2019, when the warrant was quashed (a total of 118 days).   He stayed in jail, however, in ICE custody until his initial appearance before the United States District Court for the Northern District of Georgia on December 17, 2019.   He was held in Georgia, and then Maryland, until March 24, 2021, when he was released to home confinement (an additional 464 days).   His total period of pretrial incarceration is 583 days, or about 19 months.[5]

And, as the Court is aware, his time at CDF has been particularly dangerous and severe in light of the COVID-19 pandemic.   Mr. Oguntuyi spent over fourteen months at CDF during the heart of the pandemic, making his term there far more punishing than normal pretrial incarceration.   The defendant asks the Court to consider a reduction in his sentence for this reason as well.

The defendant's position is that the appropriate loss amount is at level 14 - $636,185, which consists of $565,000 agreed as the amounts of the stolen checks, $49,000 for the check to EZ Go Trucking and $22,185 for the amounts spent on the credit cards.   Under this loss amount, a sentence of a total of four years is sufficient but not greater than necessary to accomplish the goals of sentencing before this Court.

                              Respectfully submitted,

                              _____/s/_____
                              Richard Bardos, Of Counsel
                              Schulman, Hershfield & Gilden, P.A.
                              1 East Pratt Street, 9th Floor
                              Baltimore, Maryland 21202
                              (410) 332 0850

---

charged the forged check and use of J.C.'s name, the same allegations in count 22 herein.
[5]   Interestingly, a defendant who received a 24 month sentence would be entitled to a 15% reduction for good time credit and would be required to serve 620 days, or about a month more than Mr. Oguntuyi has already served.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th of January, 2022, a copy of the foregoing was served electronically by ECF to: Office of the United States Attorney, 36 South Charles Street, Fourth Floor, Baltimore, Maryland 21201 and all defense counsel.

_____/s/_____
Richard Bardos