**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Criminal No. 1:20-cr-00285-JRR** |
| **SAMSON A. OGUNTUYI,** | |
| ***Defendant/Petitioner.*** | |

**CORRECTED MEMORANDUM OPINION**

Pending before the court is Defendant Samson A. Oguntuyi's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 208, the "Motion"), as well as the supplement at ECF No. 212. The court convened an evidentiary hearing on November 3, 2026. At the hearing, Mr. Oguntuyi voluntarily withdrew all but one basis for his Motion—ineffective assistance of counsel for failure to advise of the statutory mandatory deportation consequence of pleading guilty. For the reasons set forth below, by separate order, the Motion is granted.

## I. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside, or correct a sentence on grounds that it was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426 (1962). The Sixth Amendment right to the assistance of counsel has long been recognized as "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Therefore, a defendant who alleges constitutionally ineffective assistance of counsel asserts that his sentence was imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, the movant bears the burden of proving the asserted grounds by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). The scope of a § 2255 collateral attack is markedly narrower than an appeal, and a "collateral challenge may not do service for an appeal." *Foster v. Chatman*, 578

U.S. 488, 519 (2016) (Alito, J., concurring) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)); *United States v. Vonn*, 535 U.S. 55, 64 (2002) (holding that relief under § 2255 is reserved for situations where failure to grant relief would be "'inconsistent with the rudimentary demands of fair procedure' or [would] constitute[] a 'complete miscarriage of justice'") (quoting *United States v. Timmreck*, 441 U.S. 780, 783 (1979)).

On a § 2255 motion, the court is required to hold an evidentiary hearing "when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim." *United States v. Mayhew*, 995 F.3d 171, 176–77 (4th Cir. 2021) (providing that a hearing is required "when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, or when a credibility determination is necessary to resolve the claim") (citing 28 U.S.C. § 2255(b)). Said differently, where a movant alleges facts that, "if believed, are sufficient to show ineffective assistance of counsel," an evidentiary hearing is required. *United States v. Brannon*, 48 F. App'x 51, 54 (4th Cir. 2002).

## II. PROCEDURAL BACKGROUND and FINDINGS OF FACT

On July 15, 2021, Mr. Oguntuyi, a citizen of Nigeria, was charged via second superseding indictment with Conspiracy to Commit Bank Fraud and Mail Fraud in violation of 18 U.S.C. § 1349 (Count One); Bank Fraud in violation of 18 U.S.C. § 1344 (Counts Four through Eleven); and Aggravated Identity Theft in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(c)(5) (Counts Eighteen through Twenty-two). (ECF No. 50 at pp. 1, 9, 13.) Pursuant to a plea agreement dated August 23, 2021 (executed August 24, 2021), on August 24, Mr. Oguntuyi entered a plea of guilty as to Counts One, Seven, and Twenty-two. (ECF Nos. 80, 82.)

The plea agreement provides, *inter alia*:

> By pleading guilty, the Defendant . . . may be subject to deportation or other loss of immigration status, including

> possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States , or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

(ECF No. 82 at ¶ 4(h).)

During the plea colloquy on August 24, 2021, Judge Blake reviewed with Mr. Oguntuyi, *inter alia*, the above-quoted portion of the plea agreement. (ECF No. 145 at 14:1–15:4.) Specifically, Judge Blake informed Mr. Oguntuyi that "if you're not a U.S. citizen, you may be subject to deportation or other loss of status." *Id.* at 15:2–4. Judge Blake then directed her questioning to Mr. Richard Bardos, Mr. Oguntuyi's counsel.

> THE COURT: Let me ask you, Mr. Bardos, is there any immigration issues here?
>
> MR. BARDOS: I believe there will be, Your Honor. Mr. Oguntuyi is married to an American citizen and was in the process of becoming naturalized here.[1] So that's pending. That's the situation with immigration, Your Honor. As I understand it there's no ICE detainer against Mr. Oguntuyi at this point.
>
> THE COURT: No detainer at this point. All right, Mr. Oguntuyi, do you understand I can't tell you one way or the other, but it is possible that there may be immigration consequences because of these guilty pleas, which of course would be the same if you went to trial and were convicted, but at least in general terms would be the same. But you understand there may be immigration consequences and we can't give you a specific answer on that right now?
>
> THE DEFENDANT: Yeah, I do.

[1] During the evidentiary hearing, it became clear that Mr. Oguntuyi was in the process of seeking permanent resident (or "green card") status, not naturalized citizenship.

ECF No. 145 at 15:4–20. During the plea colloquy, Mr. Oguntuyi affirmed he had read and understood the plea agreement and was satisfied with Mr. Bardos' representation. *Id.* at 13:4–25.

On March 1, 2022, Mr. Oguntuyi was sentenced to a total of 54 months' incarceration[2] with a self-surrender date of May 16, 2022. (ECF No. 128.) At sentencing, counsel and the court again discussed Mr. Oguntuyi's immigration status with respect to conditions of supervised release:

> [Mr. Bardos:] With regard to immigration, I think it would make sense, as a special condition, that upon release, if that's what it is, that he address, to the extent possible, his immigration status and try to get another hearing so that he can be granted a green card, if possible. So I think it makes sense for a person on supervised release to comply with all laws, and that certainly is one that he should comply with.
>
> THE COURT: All right. Mr. Davio, any comments on the recommended conditions of supervised release?
>
> MR. DAVIO: No, nothing from the government.
>
> THE COURT: Okay. On the immigration status then, it would be a matter of, upon release, reporting to the appropriate immigration, just say reporting to the appropriate immigration authority, something of that nature. It's -- as I said, I don't know what the result of that is going to be.
>
> MR. BARDOS: No, I think that's fair, Your Honor, and I also note that there is no -- currently, there is no immigration detainer. So immigration isn't seeking him, but he should complete the process that he began before to be here legally.

(ECF No. 142 at 21:8–22:2.)

Mr. Oguntuyi was released from incarceration on March 5, 2024 (ECF No. 240), and taken into custody by U.S. Immigration and Customs Enforcement ("ICE") where he learned

[2] Mr. Oguntuyi was sentenced to 30 months' incarceration for each of Counts One and Seven to run concurrently, and 24 months' incarceration as to Count Twenty-two to run consecutively to the concurrent 30-month term imposed as to Counts One and Seven. Judge Blake also imposed two concurrent three-year terms of supervised release as to Counts One and Seven and a one-year concurrent term of supervised release as to Count Twenty-two. (ECF No. 128.)

he was to be deported due to his conviction of an aggravated felony. Mr. Oguntuyi filed the instant Motion *pro se* on July 26, 2024, while in ICE custody (and during the period he would have been on supervised release but for being in ICE custody). (ECF No. 208.) The Government filed a response on February 12, 2025 (ECF No. 218). On June 18, 2025, the Government removed Mr. Oguntuyi to Nigeria, his country of origin. (ECF No. 240 ¶ 9.) Following his removal, Mr. Oguntuyi filed a reply in support of the Motion on March 3, 2025. (ECF No. 219.) The court subsequently *sua sponte* appointed counsel for Mr. Oguntuyi and convened an evidentiary hearing on November 3, 2026. (ECF Nos. 237–38.) Mr. Oguntuyi (located in Nigeria) testified by remote means at the hearing; the court also heard testimony from Mr. Bardos.

**Mr. Oguntuyi's Background and Immigrant Status**

Mr. Oguntuyi entered the United States on an F-1 student visa in August 2015; he was 25 years old at the time. Thereafter, in August 2016, he married Latoya Morrella Wallensa, a United States citizen. (Hearing Ex. 2, marriage certificate.) With the assistance of immigration counsel located in Georgia, Mr. Oguntuyi's wife filed a Form I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services ("USCIS"), which was approved, and Mr. Oguntuyi filed a Form I-485 Adjustment of Status (to become a permanent resident), which was pending at the time of his arrest. Prior to his arrest in connection with the charges at issue in this case, Mr. Oguntuyi was employed selling new and used cars at auction; he testified at the evidentiary hearing that, at the time of the plea, he and is wife had a "normal" life—they both went to work everyday and reunited at home after the workday.

In December 2019, Mr. Oguntuyi was taken into federal custody in Georgia on the charges at issue here and was subsequently transferred to the district of Maryland in January 2020. Mr. Bardos was appointed to serve as defense counsel. (ECF No. 5.) Following a detention hearing on March 24, 2021, Mr. Oguntuyi was released on his personal recognizance

with Pretrial Services supervision. (ECF No. 37.) The above-referenced second superseding indictment followed in July of that year. (ECF No. 50.) As a result of his arrest, removal proceedings were initiated, but were subsequently terminated by order of the Immigration Court on February 19, 2020 (Hearing Ex. 1), following his transfer to Maryland.

At the time of his guilty plea, Mr. Oguntuyi and his wife were expecting a child and, as mentioned, resided in Georgia. (Presentence Investigation Report ("PSR"), ECF No. 91 at p. 10.) Mr. Oguntuyi had been in the United States for approximately six years at the time of his plea proceeding; his father resided in the United Kingdom and his mother and sister resided in Canada. *Id.* At the evidentiary hearing, Mr. Oguntuyi testified that the only other family in Nigeria is an uncle. Other than the conduct of which he was convicted following his guilty plea, nothing rendered him subject to deportation; there was no ICE detainer lodged against him at the time of the plea or sentencing.

**The Plea and Counsel's Advice**

The plea agreement, which had been amended multiple times including on the day of the plea, was executed the morning trial was expected to proceed. Earlier that same morning, Mr. Oguntuyi requested leave of court to discharge his counsel based on what Mr. Oguntuyi testified were continuing disagreements and his general belief that counsel was not adequately prepared for trial, as discovery was continuing to be provided right up to the day of trial. Judge Blake denied his request, explaining the voir dire panel was expected to arrive shortly. Mr. Oguntuyi testified at the evidentiary hearing on the Motion that he generally felt it best to take the plea rather than run the risk of receiving a harsher sentence if he were found guilty by a jury.

At the evidentiary hearing, Mr. Oguntuyi testified that, prior to entering the plea agreement, he had made Mr. Bardos aware that he was married and that he was in the process of gaining permanent resident status. Mr. Oguntuyi testified at the hearing that Mr. Bardos

never advised him that pleading guilty would subject him to mandatory deportation or suggested he should consult an immigration lawyer on the affect of pleading guilty on his immigrant status; and had he known or been properly advised that his guilty plea would render him subject to mandatory deportation, he would not have pled guilty and instead would have proceeded to trial. (*See also* ECF No. 213 ¶ 12, asserting he "would've proceeded to trial.")

Mr. Oguntuyi further asserts in his Motion and accompanying declaration that counsel "reaffirmed and misrepresented to Mr. Oguntuyi that since his wife is an American, he could not be deported." (ECF No. 208-1 at p. 1.) At the hearing, Mr. Oguntuyi reasserted that Mr. Bardos explained that he "should be able to go ahead with my [green card] processing, which I already started. And the fact that I did not have [a] detainer [was a] good thing"; based on that advice, he understood (incorrectly) that if he pled guilty, he "would be able to get a lesser time . . . and that as soon as I'm done serving that time I would be able to move forward and continue with my processing of becoming naturalized."

On the subject of family connection in Nigeria, Mr. Oguntuyi testified that at the time of the plea, he only had an uncle as family in Nigeria and separation from his wife and family "would have been a devastating experience that I cannot even imagine." When asked "how important was staying in the United States compared with the amount of imprisonment you might receive?", Mr. Oguntuyi explained: "Even though it was going to be a significant amount of time . . . the fact that I . . . will have families to come back home to rely on and to trust in, it meant a lot to me." He explained further, "At that time my wife was pregnant and we was trying to make sure that she was in a good space for to be able to have a healthy pregnancy." When asked "were you preparing to go to trial?", Mr. Oguntuyi answered: "Yes, I was."

At the evidentiary hearing, Mr. Oguntuyi agreed that one goal of his guilty plea was to serve as little incarceration time as possible.[3] He explained that (in his view) Mr. Bardos appeared "not ready to go through with the trial. And if I had went through with the trial, I would have probably got much more time. So, I decided, okay . . . I'm just going to sign that plea"—but if he had known "removal was guaranteed," being convicted at trial was a "risk" he "was willing to take."

As mentioned above, the plea agreement was dated August 23, 2021, had been revised multiple times, and was entered the following morning immediately before a jury was to be empanelled. Mr. Oguntuyi testified he "didn't have much time. It all happened so fast." When asked how his attorney's "statements about marriage and [the] pending naturalization process affected [his] understanding of the court's warning in the plea agreement," Mr. Oguntuyi testified: "Coming from a professional standpoint and the fact that he's experienced in his field and him making those statement without nobody contradicted it, I believed in it. So I didn't have no type of doubt whatsoever when he made those statement." Mr. Oguntuyi explained further that no one (including counsel) made any promises to him about the outcome of any immigration process, but no one properly advised at all: "I mean, it was not promised but also at the same time I wasn't warned of auto-deportation, that's totally different."

At the evidentiary hearing, on inquiry of Government counsel, Mr. Bardos, defense counsel for Mr. Oguntuyi, confirmed that he told Mr. Oguntuyi "that there could be some" immigration consequences, including a "risk of deportation," but "the specifics, no. I'm not an immigration attorney." He testified he did not tell Mr. Oguntuyi he would not be deported and Mr. Oguntuyi did not affirmatively volunteer to him that "immigration status is actually the only issue" that mattered to him and he "would rather proceed to trial if it meant an adverse

[3] However, Mr. Oguntuyi also testified that before he was indicted in Maryland, he was offered a guilty plea in exchange for a time served disposition, which he rejected.

immigration consequence." He further confirmed that Mr. Oguntuyi "finally agreed to the plea offer" on August 24, 2021, the day trial was set to begin.

On inquiry of counsel for Mr. Oguntuyi, Mr. Bardos testified that, prior to the plea, he knew Mr. Oguntuyi was a Nigerian citizen, not a United States citizen; and that he knew "he came here. His visa expired. He married a U.S. citizen." Mr. Bardos further recounted that at sentencing, he presented Mr. Oguntuyi's marriage, his "interrupted green card process and family circumstances as part of mitigation." On pre-plea advice on immigration consequences, he testified: "My best recollection is that I said you're married to an American citizen, that should be able to get you a green card, you should pursue that." When asked what he advised Mr. Oguntuyi "about deportability as a result of each count of conviction," Mr. Bardos answered, "I don't believe I addressed that specifically." He further confirmed that he did not "identify the immigration classification of the fraud conspiracy bank fraud and identity theft counts;" "review the immigration statutes and the stipulated loss amounts to determine if there was any connection between the two;" or determine whether "the plea would make him deportable." "I did not reach a conclusion one way or the other," he testified. Mr. Bardos further confirmed that he did not research or consult with an immigration lawyer about the "deportability of these convictions," or recommend Mr. Oguntuyi "consult immigration counsel." Mr. Bardos also testified that he did not explain to Mr. Oguntuyi, in the context of the plea agreement's statement of potential immigration consequences, "that marriage-based relief wouldn't be available."

At the evidentiary hearing, Mr. Bardos also provided context for his suggestion at sentencing that Judge Blake include as a special condition of supervised release that Mr. Oguntuyi "address, to the extent possible, his immigration status and try to get another hearing so that he can be granted a green card, if possible." (ECF No. 142 at 21:8–14.) Specifically, Mr. Bardos explained: "I was saying that on release he should be allowed to pursue his

immigration status and . . . there was no detainer, so there was no requirement on release that he turn himself in. But she could certainly require him to pursue legal status in America." He further agreed that statement in court was consistent with his pre-plea discussions with Mr. Oguntuyi that his marriage to an American citizen was an avenue to obtain permanent resident status.

## III. ANALYSIS

Mr. Oguntuyi raises a single argument in support of his Motion.[4] Mr. Oguntuyi asserts his trial counsel was ineffective for failure to advise him that pleading guilty to an aggravated felony would result in mandatory deportation. To prevail on a motion for relief on grounds of ineffective assistance of counsel, Mr. Oguntuyi must show that (1) "counsel's performance was deficient . . . ma[king] errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense . . . depriv[ing] the defendant of a fair trial." *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Missouri v. Frye*, 566 U.S. 134, 140 (2012) (noting that *Strickland* governs claims of ineffective assistance of counsel in the plea bargain context). Importantly, "[j]udicial scrutiny of counsel's performance must be highly deferential" when evaluating trial counsel's performance. *Strickland*, 466 U.S. at 689. The standard of adequate performance is "simply reasonableness under prevailing professional norms." *Id.* at 688. As for the second prong, Mr. Oguntuyi must show a reasonable probability, based on contemporaneous evidence, that he would not have pled guilty and "would have insisted on going to trial" but for counsel's complained-of deficiency. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Lee v. United States*, 582 U.S. 357, 365 (2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

[4] As referenced above, at the hearing Mr. Oguntuyi voluntarily withdrew as grounds for relief his assertions that trial counsel was ineffective for (1) failure to inquire into the impartiality of the judge and move for recusal or for withdrawal of his guilty plea; (2) failure to file an appeal; and (3) failure to move to suppress his co-defendant's statement. (ECF Nos. 208, 208-1.)

Both prongs of the *Strickland* test must be satisfied, they need not be assessed in any particular order, and the court need not address both questions if the movant fails to meet his burden as to one. *Id.* at 691.

Mr. Oguntuyi asks this court to vacate his sentence because, he asserts, Mr. Bardos misadvised him regarding the immigration consequences of pleading guilty thus rendering his guilty plea involuntary. On review of the evidence and the entirety of the record before the court, including the opportunity to evaluate the substance and credibility of testimony offered at the hearing, as well as argument of counsel, the court finds that Mr. Oguntuyi's and Mr. Bardos' accounts are materially aligned and consistent. The court finds that Mr. Oguntuyi's trial counsel did not advise him that pleading guilty would render him subject to mandatory deportation and incorrectly advised him that, upon his release from incarceration, he would be able to (and should) resume his interrupted permanent resident application process. For reasons addressed in more detail below, the court further credits Mr. Oguntuyi's testimony that had he been correctly advised, he would not have pled guilty and would have proceeded to trial.

The Government counters that Mr. Oguntuyi fails to meet his burden because the plea agreement advised him that he "could be subject to 'automatic removal' upon conviction." (ECF No. 218 at p. 1, quoting ECF No. 82 ¶ 4(h).) The Government further relies upon counsel's response to Judge Blake's inquiry at the plea proceeding regarding whether there were any immigration "issues"—Mr. Bardos stated: "I believe there will be, Your Honor. Mr. Oguntuyi is married to an American citizen and was in the process of becoming naturalized here. So that's pending. That's the situation with immigration, Your Honor. As I understand it there's no ICE detainer against Mr. Oguntuyi at this point." *Id.* at 4 (quoting ECF No. 145 at 15:6–11.) The Government also relies on the court's plea advisement that Mr. Oguntuyi may face immigration consequences if he completes his guilty plea, which Mr. Oguntuyi confirmed he understood. *Id.* at 5 (quoting ECF No. 145 at 15:12–20). Finally, the Government urges

that Mr. Oguntuyi cannot demonstrate prejudice because he offers "no contemporaneous evidence that indicates he would not have pled guilty." (ECF No. 218 at p. 10.)

**A. Constitutionally Deficient Performance**

A noncitizen convicted of an aggravated felony under the Immigration and Nationality Act ("INA") is "subject to mandatory deportation." *Lee v. United States*, 582 U.S. 357, 361–62 (2017); 8 U.S.C. § 1227(a)(2)(A)(iii). Aggravated felonies include any offense which "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). "[T]he deportation consequence is truly clear," and "the duty to give correct advice is equally clear" where a defendant is charged with an aggravated felony and counsel can determine that conviction will render the defendant categorically deportable "simply from reading the text of the statute."[5] *Padilla v. Kentucky*, 559 U.S. 356, 368–69 (2010). Performance is deficient where counsel provides the defendant with "false assurance that his conviction [will] not result in his removal from this country." *Id.* at 368.

Subsequent warnings given to a defendant, such as those provided during a plea colloquy, can cure deficient performance to the extent they "undermine [the] claim that the defendant was prejudiced by his attorney's misadvice." *Lee v. United States*, 582 U.S. 357, 369 n.4 (2017). But plea colloquy warnings are only curative of misadvice insofar as "the district court corrects the misadvice and the defendant understands the correction." *United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017). Accordingly, generalized warnings of potential immigration consequences do not correct specific misadvice regarding a defendant's status as categorically deportable. *United States v. Akinsade*, 686 F.3d 248, 254 (2012); *see*

[5] To be sure, "there are numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *Padilla*, 559 U.S. at 369. There is also necessarily some degree of uncertainty in advising a defendant of immigration consequences because deportation is never "wholly inevitable," as it is ultimately "the executive's prerogative whether to actually remove a human being from the United States." *United States v. Murillo*, 169 F.4th 273, 287 (4th Cir. 2026). Nevertheless, "deportation is so likely for those convicted of an aggravated felony that it is akin to mandatory deportation." *United States v. Swaby*, 855 F.3d 233, 237 (4th Cir. 2017) (quotations omitted).

*also Swaby*, 855 F.3d at 240 (4th Cir. 2017) (holding that generalized warning "about merely the risk of deportation is insufficient to cure counsel's erroneous advice that the defendant's crime would not render him categorically deportable") (citing *Akinsade*, 686 F.3d at 254).

Mr. Oguntuyi pled guilty to aggravated felonies, offenses that "involve fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i).[6] Thus, Mr. Oguntuyi's immigration consequence upon a plea or conviction—mandatory deportation—was "truly clear" from the face of the INA. *Padilla*, 559 U.S. at 369; 8 U.S.C. § 1227(a)(2)(A)(iii). As such, counsel's "duty to give correct advice" was "equally clear." *Padilla*, 559 U.S. at 357.

Yet Mr. Oguntuyi's counsel did not advise him he would be subject to mandatory deportation if he pled guilty. Instead, counsel advised him pre-plea that due to his marriage to a U.S. citizen and lawful entry into the country, Mr. Oguntuyi would have an opportunity to appear in front of the "immigration agency" to have his immigration status adjusted. (ECF No. 213 ¶ 9.) Indeed, a requirement that Mr. Oguntuyi contact immigration officials upon his release was incorporated into Mr. Oguntuyi's conditions of supervised release on this mistaken premise. (ECF No. 142 at p. 21:8–22:4.) Under the plea agreement, Mr. Oguntuyi agreed to plead guilty to aggravated felonies, but the agreement framed immigration consequences as mere possibilities. (ECF No. 82 ¶ 4(h)) (stating defendant "may be subject to deportation or other loss of immigration status"). Such "boilerplate" language, akin to generalized warnings, does not cure specific misadvice. *United States v. Murillo*, 927 F.3d 808, 816 (4th Cir. 2019).

---

[6] ECF No. 82 at ¶ 2; 18 U.S.C. § 1349 (Attempt and Conspiracy); 18 U.S.C. 1344(1) ("Whoever knowingly executes, or attempts to execute, a scheme or artifice— . . . to defraud a financial institution" or "obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises"); 18 U.S.C. 1028A(1) ("Whoever . . . knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person . . . .") The INA defines "aggravated felony" as, *inter alia*, "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000[.]" 8 U.S.C § 1101(a)(43)(M)(i). Here, alleged losses far exceed that threshold. (ECF No. 82 at ¶ 6(b); ECF No. 91 at p. 6; ECF No. 218 at p. 1.)

Mr. Oguntuyi's Motion is not diminished by boilerplate plea agreement language that "[t]he Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences." (ECF No. 82 ¶4(h).) While plea agreement and proceeding language are, of course, always relevant, they:

> must be considered in their context: When a defendant has been told—multiple times—that immigration consequences are not mandated but merely a 'possibility,' a willingness 'to plead guilty regardless of any immigration consequences' does not mean that the defendant was willing to plead guilty if doing so meant *mandatory* deportation. The mere utterance and existence of such statements and language—without context—cannot conclusively determine that a defendant would have pled guilty regardless of the immigration consequences of doing so.

*Murillo*, 927 F.3d at 817 (emphasis in original) (citing *United States v. Rodriguez-Vega*, 797 F.3d 781, 790 n.9 (9th Cir. 2015) ("[T]he effectiveness of th[e] written warning was substantially diminished by the context in which it was given, *i.e.* the oral statements by [the defendant's] counsel and the court that [the defendant] faced only a possibility of removal.")).

Despite the plain fact that Mr. Oguntuyi would be subject to mandatory deportation upon a conviction, the plea agreement and plea proceedings universally characterized that risk as a possibility. (ECF Nos. 82, 145.) Counsel's advice was that Mr. Oguntuyi would have an opportunity to appear before an immigration tribunal to request adjustment to his status in view of his marriage to a U.S. citizen and presence in the country. Mr. Oguntuyi's account of that advice received from counsel, *see* ECF No. 213, is consistent with counsel's statements at the plea proceeding—during which counsel advised the court that the only immigration "issue" was that Mr. Oguntuyi was in the process of becoming a naturalized citizen, ECF No. 145 at p. 15:4–20; and still later at sentencing, when counsel suggested that a term of supervised release should require Mr. Oguntuyi to contact the immigration authorities to schedule his green card

hearing, a process he "began before [his conviction] to be here legally." (ECF No. 142 at pp. 21:8–22:2.)

Counsel's exchange with the court at sentencing to require Mr. Oguntuyi to "report[] to the appropriate immigration" upon release to pursue legal immigration status compounds the implication that deportation was, contrary to INA, a possibility rather than a certainty. (ECF No. 142 at 21:20–21.) In reality, Mr. Oguntuyi's mandatory deportation status under INA was a certainty. 8 U.S.C. § 1227(a)(2)(A)(iii). Upon pleading guilty, he forfeited any opportunity to request "adjustment" of his status or to resume the process of adjusting his status to permanent resident. *See* 8 U.S.C. § 1229b(b)(1) (permitting Attorney General to cancel removal, and adjust status, of noncitizen so long as, *inter alia*, he has not been convicted of an aggravated felony); 8 U.S.C. § 1182(a)(9)(A)(i) (imposing lifetime entry bar on noncitizens convicted of aggravated felonies).

Yet in the plea agreement and at the plea proceeding, Mr. Oguntuyi was given general warnings that framed immigration consequences as a possibility—not a certainty. It bears repeating: "[w]hen a defendant has been told—multiple times—that immigration consequences are not mandated but merely a 'possibility,' a willingness 'to plead guilty regardless of any immigration consequences' does not mean that the defendant was willing to plead guilty if doing so meant *mandatory* deportation." *Murillo*, 927 F.3d at 817 (emphasis in original) (citing *Rodriguez-Vega*, 797 F.3d at 790 n.9). As set forth above, "false assurance[s]" constitute deficient performance unless cured by future warnings; no such cure was administered here. *Padilla*, 559 U.S. at 368; *see Akinsade*, 686 F.3d at 255–56 (finding the court's warnings were not curative). While the court's warnings (and those in the plea agreement) addressed the topic of immigration consequences, ECF Nos. 145, 82, there is no indication that Mr. Oguntuyi understood those statements to be corrective of counsel's advisement that he would be able to resume immigration proceedings to obtain a green card or appear to seek adjustment of his

status generally.[7] *Swaby*, 855 F.3d at 240 (requiring that the "defendant understands the correction" for future warnings to be curative of deficient performance). Nor did the court's generalized warnings squarely correct the specific misadvice counsel gave Mr. Oguntuyi—that his marriage to a United States citizen would permit him to pursue legal status after release. *Akinsade*, 686 F.3d at 254; ECF No. 213 ¶ 9. Accordingly, counsel's performance was constitutionally deficient as to the immigration consequences of Mr. Oguntuyi's plea.

**B. Prejudice**

Mr. Oguntuyi must also demonstrate by a preponderance that there is a "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Government asserts that Mr. Oguntuyi fails to meet his burden here because he has not presented contemporaneous evidence that he would have forgone a plea and proceeded to trial if he had been correctly advised.[8] *Lee v. United States*, 582 U.S. 357, 369 (2017) (providing that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.")

While the court is mindful that *post hoc* assertions alone are not adequate to up-end a plea as a general proposition, the Fourth Circuit instructs that where a claim of ineffective assistance of counsel is rooted in misadvice as to immigration consequences, *Strickland*

[7] The Government has marshalled no evidence to counter or otherwise address Mr. Oguntuyi's attestation; rather, the Government takes the position that it is of no moment in the face of the plea agreement and plea colloquy. (ECF No. 218 at p. 9.) As discussed *supra*, neither the plea agreement nor the colloquy adequately cure the affirmative misadvice Mr. Oguntuyi received. The Government's arguments are therefore unpersuasive in the face of the law of this court and the Fourth Circuit.

[8] The Government confuses the issue when it says that Mr. Oguntuyi's allegation of prejudice fails because going to trial would have been futile: "the evidence against him was overwhelming." (ECF No. 218 at p. 2.) The presumptive "odds" at trial are not dispositive on the question of prejudice; the requisite prejudice is waiver of the right to trial itself should the court find adequate evidence to conclude the defendant would have proceeded to trial absent the particular misadvice. The Supreme Court has declined to adopt a *per se* rule on this point. *Lee*, 582 U.S. at 371 (distinguishing acceptance of a plea, which would "*certainly* lead to deportation," from going to trial which would "*[a]lmost* certainly" lead to same) (emphasis in original).

prejudice may be found where the movant demonstrates "significant familial" ties in the United States. *United States v. Akinsade*, 686 F.3d 248, 255-56 (2012). Here, Mr. Oguntuyi is married to a United States citizen; at the time of the plea, they were expecting a child; and he was in the process of seeking lawful permanent resident status. *Id.* ("We have further found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation.") (citing *United States v. Gajendragadkar,* No. 97–7267, 1998 WL 352866, at *2 (4th Cir. June 3, 1998)). As explained, his father resided in the United Kingdom; his mother and sister resided in Canada; and he had only an uncle in Nigeria, a country he left at age 25. Thus, the record before the court is that Mr. Oguntuyi's immediate family all resided outside of his country of origin, and but for an uncle there is no record of any remaining connections for him there; and his pregnant wife of four years lived with him Georgia. *Id.*; *see also Lee*, 582 U.S. at 359 (finding significant that the defendant had "strong connections to the United States, while he had no ties to [his home country]"). The court declines to arbitrarily quantify the threshold for sufficient familial connection, *see Lee*, 582 U.S. at 367 (noting the fact-intensive, totality of the circumstances nature of the prejudice analysis), and notes that deportation is a "particularly severe penalty." *Id.* at 370 (quoting *Padilla*, 559 U.S. at 365). Courts recognize that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence[.]" *Padilla*, 559 U.S. at 364 (quoting *Immigr. and Naturalization Servs. v. St. Cyr*, 533 U.S. 289, 322 (2001)).

The court is also mindful that other factors may have contributed to Mr. Oguntuyi's decision to plead guilty, including advice as to the strength of the Government's case and possible sentencing advantages. But where deportation is mandatory upon conviction, it is infinitely plausible that a defendant may reasonably choose to proceed to trial in hopes of a

narrow chance of acquittal, rather than opt for the certainty of deportation on a guilty plea especially given familial or other ties in the United States. *Lee*, 582 U.S. at 371. And on this point, Mr. Oguntuyi is credible. The court is well persuaded that had he known a guilty plea would result in mandatory deportation, *i.e.*, but for counsel's misadvice, he would have gone to trial.

Accordingly, the court finds that Mr. Oguntuyi has demonstrated the requisite prejudice in accordance with *Strickland* and its progeny.[9]

## IV. CONCLUSION

For the reasons set forth herein, by separate order, the Motion will be granted.

November 4, 2026

/S/
________________________
Julie R. Rubin
United States District Judge

[9] By status report and supplemental status report filed at ECF Nos. 240 and 242, the Government raises the issue of mootness of the Motion given that Mr. Oguntuyi has been removed from the United States since its filing. The Government, however, did not raise the issue at the hearing. For the sake of completeness and clarity, the court finds the Motion has not been rendered moot by virtue of Mr. Oguntuyi's removal, because he continues to face collateral consequences of his involuntary guilty plea to, and subsequent conviction of, an aggravated felony. *United States v. Herrera-Pagoada*, 14 F.4th 311, 317 n.5 (4th Cir. 2021); *United States v. Swaby*, 855 F.3d 233, 239 n.2 (4th Cir. 2017); *Hrcka v. United States*, No. 3:11-cv-RJC, 3:08-cr-225-RJC-DCK-1, 2013 WL 3878538, at *3 (W.D. N.C. July 26, 2013); *Pola v. United States*, 778 F.3d 525 (6th Cir. 2015); *c.f., Yanaz Piedra v. Blanche*, 188 F.4th 755, 768 (4th Cir. 2026) (holding "an alien is not inadmissible under § 1182(a)(2)(A)(i) based on a vacated conviction.").